**EXHIBIT B**
**PROPOSED COMPLAINT**

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA
WILLIAMSPORT DIVISION

| | | |
|---|---|---|
| JEFFREY D. HILL, | : | Civil Action 4-CV-22-556-WIA |
| | : | |
| Plaintiff | : | (Magistrate Judge Arbuckle) |
| | : | |
| v. | : | |
| | : | |
| DOUG MASTRIANO, | : | |
| | : | |
| Defendant | : | |

**COMPLAINT**

1. Plaintiff, Jeffrey Hill, is an adult individual and Pennsylvania elector residing at 306 South Washington Street, Muncy Borough, Lycoming County, Pennsylvania.

2. Proposed Plaintiff Intervenor, Calvin Clements, DVM CCRP ("Clements"), is a Pennsylvania elector with an address of 25 Country Lane, Palmyra, South Londonderry Township, Lebanon, County, Pennsylvania.

3. Doug Mastriano ("Mastriano") is a Pennsylvania elector currently serving in the Pennsylvania Senate seeking the Republican nomination for Governor of Pennsylvania with offices in the Pennsylvania Capitol in Harrisburg, as well as Chambersburg and Gettysburg.

4. Mastriano's current State Senate District 33, including portions of Adams, Cumberland, Franklin, and York counties, is entirely embraced by the Middle District.

5. Jurisdiction is appropriate in this court as the matter arises from a federal question, specifically the Fourteenth Amendment, Section 3 of the United States Constitution. 28 U.S.C. 1331.

6. Venue is appropriate in the Middle District as Plaintiff and the Proposed Intervenor both reside in the Middle District, and Defendant may be found at his Pennsylvania State Senate offices in Harrisburg within the Middle District.

7. On January 6, 2021, Mastriano rented three (3) buses to transport Pennsylvanians to Washington, DC to attend a so-called "Stop the Steal" rally in the Ellipse.

8. Many participants in this rally, including Mastriano, left the rally in the Ellipse, having been called by Former President Trump to go to the Capitol to further protest the certification of the election of Joseph R. Biden, Jr. as President as required by the 12th Amendment.  *See*, U.S. Const. amend. 12.

9. At the Capitol, United States Capitol Police erected a series of barricades to prevent disruption of the electoral count being conducted in a joint session of Congress.

10. Hundreds to thousands of Trump supporters stormed the Capitol, crossing various police lines, invading the Capitol, causing substantial property damage, and disrupting the electoral count.

11. Among those crossing the police lines was Mastriano and his spouse.  See, https://m.youtube.com/watch?v=rxhoob6NfaY&ab_channel=AmericanPatriot; https://m.youtube.com/watch?v=MfWCkE14JXY.

12. Mastriano lied about not crossing Capitol police lines, falsely claiming that he allegedly complied with all police commands.  See, https://senatormastriano.com/2021/05/25/mastriano-condemns-huffington-post-attack-article/.

13. Mastriano otherwise participated in public efforts to reject the will of the voters to install the loser of the 2020 Presidential election, and the loser of Pennsylvania's 20 electoral votes, into a second term in office.  *See*, Subverting Justice, How the Former President and His Allies Pressured DOJ to Overturn the 2020 Election, United States Senate, Majority Staff Report (2022) https://www.judiciary.senate.gov/imo/media/doc/Interim%20Staff%20Report%20FINAL.pdf (last visited Apr. 17, 2022).

14. Specifically, Mastriano participated in the "hearings" conducted in Gettysburg alleging nonexistent voter fraud.  *Id.* at *4.

15. Mastriano communicated his false election fraud claims to the former president's team trying to overturn the election.  *Id.*

16. The former president referenced Mastriano's work to undermine the election in his efforts to overthrow the incoming Biden government.  *Id.* at *15-16.

17. At least one media outlet observed Mastriano crossing police lines at the January 6 insurrection.  Id. at *26; *citing*, Jeremy Roebuck & Andrew Seidman, *Pa. GOP Lawmaker Doug Mastriano Says He Left the Capitol Area Before the Riot.  New Videos Say Otherwise.*, Phila. Inquirer (May 25, 2021).

18. The net result of the activities of January 6, 2021 were accurately described by the Honorable David Carter in his opinion in the *Eastman* discovery dispute before the United States District Court of the Central District of California:

> *Dr. Eastman and President Trump launched a campaign to overturn a democratic election, an action unprecedented in American history.  Their campaign was not confined to the ivory tower – it was a coup in search of a legal theory.  The plan spurred violent attacks on the*

> *seat of our nation's government, led to the deaths of several law enforcement officers, and deepened public distrust in our political process.*
>
> *More than a year after the attack on our Capitol, the public is still searching for accountability. This case cannot provide it. The Court is tasked only with deciding a dispute over a handful of emails. This is not a criminal prosecution; this is not even a civil liability suit. At most, this case is a warning about the dangers of "legal theories" gone wrong, the powerful abusing public platforms, and desperation to win at all costs. If Dr. Eastman and President Trump's plan had worked, it would have permanently ended the peaceful transition of power, undermining American democracy and the Constitution. If the country does not commit to investigating and pursuing accountability for those responsible, the Court fears January 6 will repeat itself.*

*Eastman v. Thompson*, Case 8:22-cv-99-DOC-DFM at *44 (C.D. Cal. Mar. 28, 2022).

19. After the Civil War, the United States adopted the Fourteenth Amendment, including the Article III prohibition of insurrectionists serving in office. *See*, U.S. Const., amend. IV, sec. 3.

20. The limited federal case law supports that those violating the insurrection clause of the Fourteenth Amendment be prohibited from seeking elective office. *See*, *Powell v. McCormack*, 395 U.S. 486, 521 n.41 (1969) (noting that section 3 arguably imposes a "qualification for office"); *Hassan v. Colorado*, 495 Fed. App'x. 947, 948 (10th Cir. 2012); *aff'd*, 870 F.Supp.2d 1192 (D. Colo. 2012) (now Justice Gorsuch noting that state requirements requiring presidential candidates to affirm constitutional eligibility for office are appropriate).

21. Candidates constitutionally ineligible for office may be excluded from the ballot. *Hassan v. Colo.*, 495 F. App'x 947, 948 (10th Cir. 2012) *accord Peace & Freedom Party v. Bowen*, 750 F.3d 1061 (9th Cir. 2014); *see also, Burdick v. Takushi*, 504 U.S. 428, 441 (1992) ("the

right to vote is the right to participate in an electoral process that is necessarily structured to maintain the integrity of the democratic system").

22. The political question doctrine does not apply in this matter. *Elliott v. Cruz*, 137 A.3d 646, 652 (Pa. Cmwlth. 2016).

23. Mastriano and others defied the authority of the United States. *See*, *In re Charge to Grand Jury*, 62 F.828, 830 (N.D. Ill. 1984) (defining insurrection as an uprising "so formidable as for the time being to defy the authority of the United States"); *County of Allegheny v. Gibson*, 90 Pa. 397, 417, 35 Am. Rep. 670 (Pa. 1879), *citing* Worcester's Dictionary (1835) (defining "insurrection" as "A rising against civil or political authority, the open and active opposition of a number of persons or to the execution of law in a city or state; a rebellion, a revolt.").

24. The insurrectionists' goal was to overthrow the United States government by disrupting its core functions. *See*, *Pan. Am. World Airways, Inc. v. Aetna Cas. & Sur. Co.*, 505 F.2d 989, 1005 (2d Cir. 1974) (insurrection requires "an intent to overthrow a lawfully constituted regime"); *Home Ins. Co. of N.Y. v. Davila*, 212 F.2d 731, 736 (1st Cir. 1954) (insurrectionary action must be "specifically intended to overthrow the constituted government and to take possession of the inherent powers thereof").

25. Those storming the Capitol and taking various actions leading up to January 6, including Mastriano, intended to intimidate Congress and the then-Vice President from performing their duties to count the Electoral Count vote.

26. That an insurrection was doomed to fail does not disqualify it as an insurrection for legal purposes. *See*, *Davila*, 212 F.2d at 736 ("An insurrection aimed to accomplish the

overthrow of the constituted government is no less an insurrection because the chances of success are forlorn.").

27. In court filings, the United States Department of Justice characterized the attack on the Capitol, in which Mastriano participated, as "an insurrection attempting to violently overthrow the United States Government."  See, *United States v. Chansley*, No. 21-cr-3 (D. Ariz. Jan. 14, 2021) ECF No. 5, https:/bit.ly/3FJ1LdM.

28. Mastriano's conduct could be found to meet the definition of seditious conspiracy.  See, 18 U.S.C. 2384 (defining the crime as "conspire[ing] to overthrow, put down, or destroy by force the Government of the United States or oppose by force the authority thereof, or by force to prevent, hinder, or delay the execution of any law of the United States.")

29. No criminal charges are required under Section 3 of the Fourteenth Amendment to disqualify a candidate for office.  See, U.S. Const., amend. XIV sec. 3.

30. One who acted "[v]oluntairly aiding the rebellion, by personal service, or by contributions, other than charitable, of any thing that was useful or necessary" to the insurrection "engages" in insurrection.  *Worthy v. Barrett*, 63 N.C. 199, 203 (N.C. 1869); *United States v. Powell*, 27 F.605, 65 N.C. 709 (D. N.C. 1871).

31. Here, Mastriano and his spouse participated in the Capitol riots, crossing police lines without authorization.

32. While Mastriano did not enter the Capitol, his false statements about not crossing Capitol police lines do not shield him from removal from the ballot.

33. Had Mastriano only attended the rally in the Ellipse and not crossed any police lines, his conduct would have likely not risen to the level of potential removal from the ballot.

34. Had Mastriano not peddled conspiracy theories that the election was stolen, as documented in the Senate report, Mastriano would likely be able to show that his mere words, without the weight of his role as a State Senator, might become First Amended protected political speech. *Hustler Ent. v. Falwell*, 485 U.S. 46, 51, 108 S.Ct. 876, 99 L.Ed.2d 41 (1988).

35. Under Pennsylvania case law, Mastriano's efforts to overthrow the incoming government, including his spreading conspiracy theories about the conduct of the 2020 presidential election, his participation in January 6, and his conduct after the insurrection of that day, meets Pennsylvania's definition of insurrection.

36. Applying Pennsylvania's definition of "insurrection" to the Fourteenth Amendment, Mastriano's conduct disqualifies him from seeking elective office.

37. However, his conduct in attempting to overthrow the incoming Biden administration and install the loser of the 2020 General Election, Donald Trump, as the victor, disqualifies Mastriano from any further elective office in this Commonwealth.

WHEREFORE, Calvin Clements respectfully requests that this Court disqualify Doug Mastriano from his candidacy for Governor of Pennsylvania and provide any other relief as may be just.

Respectfully Submitted,

Date:   /s/ Rich Raiders
Rich Raiders, Esq., Attorney 314857
Raiders Law PC
1150 Chestnut Street
Lebanon, PA  17042
484 509 2715 voice, 610 898 4623 fax
rich@raiderslaw.com
Attorney for Calvin Clements

## VERIFICATION

I hereby swear or affirm that the foregoing is true and correct to my best knowledge, information and belief as required under 28 U.S.C. 1746.

Date: __4/21/2022__    _____
                              Calvin Clements

**CERTIFICATE OF SERVICE**

I hereby certify that on this date, the foregoing motion to intervene was filed electronically and served upon parties Jeffery Hill and Doug Mastriano by First Class Mail as required by Rule 5.

Jeffrey Hill
306 South Washington Street
Muncy, PA  17756

Doug Mastriano
187 West Capitol
Harrisburg, PA 17120

Date:   April 25, 2022               /s/ Rich Raiders_____